**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SHABNAM KAYAMI, et al.,

Plaintiffs,

v.

KRISTINA KVIEN, in her official capacity as United States Ambassador to Armenia, et al.,

Defendants.

Case No.: 25-cv-2205-BJC-GC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**[ECF Nos. 10-12]**

Plaintiffs Shabnam Kayami and Bahman Khayyami (collectively the "Plaintiffs") filed suit against Defendants Kristina Kviena, in her official capacity as the United States Ambassador to Armenia, and other government officials (collectively the "Defendants"). Before the Court is Defendants' Motion to Dismiss. ECF No. 10. Plaintiffs filed an Opposition, ECF No. 11, to which Defendants submitted a Reply. ECF No. 12. For the reasons below, Defendants' motion to dismiss is granted in part and denied in part.

**BACKGROUND**

**A. Factual Background**

Plaintiff Shabnam Kayami is a United States citizen and the daughter of Plaintiff Bahman Khayyami, an Iranian national. ECF No. 1 at ¶¶ 6-7. On August 26, 2021, Ms.

Kayami filed a Form I-130 with United States Citizenship and Immigration Services ("USCIS") for her father. ECF No. 1 at ¶¶ 13-14; *see also* ECF No. 1-2 (Ex. A) at 1. On January 20, 2022, Mr. Khayyami's Form I-130 application was approved, and then forwarded to the State Department's National Visa Center ("NVC") for pre-processing. *See* ECF No. 1 at ¶ 14; *see also* ECF No. 10-1 (McDonald Declaration) at ¶ 4. On February 26, 2024, Mr. Khayyami appeared for his scheduled immigrant visa interview with a consular officer at the U.S. Embassy in Yerevan, Armenia to execute his immigrant visa application. ECF No. 1 at ¶ 15; ECF No. 1-2 (Ex. D) at 13; ECF No. 10-1 at ¶ 5.

During the interview, the consular officer refused to issue Mr. Khayyammi's immigrant visa application and, instead, requested that he supply additional information, *see* ECF No. 10-1 at ¶¶ 5-6, which Mr. Khayyami provided on March 1, 2024. ECF No. 1 at ¶¶ 16-18. Plaintiffs allege that, since the February 2024 interview, Mr. Khayyami's "visa application has remained in administrative processing without any clear explanation or timeline for resolution," despite "multiple efforts to obtain information and prompt resolution[.]" ECF No. 1 at ¶¶ 19, 21-22. Plaintiffs further allege that the "delay in adjudicating the visa application … has caused significant hardship" and "loneliness" to Plaintiffs, especially following the recent loss of Mr. Khayyami's wife. ECF No. 1 at ¶¶ 23-24.

**B. Procedural Posture**

On August 26, 2025, approximately eighteen months following Mr. Khayyami's interview with the consular officer, Plaintiffs filed the complaint, seeking to compel Defendants to provide Plaintiffs with a status update, to "promptly adjudicate" Mr. Khayyami's immigrant visa application, and to declare that Defendants' delay in adjudicating the visa application violates the Administrative Procedure Act ("APA"). ECF No. 1 at 5. Plaintiffs sue under the Mandamus Act, 28 U.S.C. § 1361, *id*. at ¶ 1, and seek relief based on 5 U.S.C. §§ 706(1) of the APA. *Id*. at ¶¶ 4, 29, 42-47. On December 12, 2025, Defendants filed this instant Motion, seeking to dismiss the complaint in its entirety under Rules 12(b)(1) and 12(b)(6). ECF No. 10.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994) (citation omitted). "It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted). Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A party has two methods to challenge subject-matter jurisdiction—a facial or factual attack.

"In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). By contrast, a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. For these challenges, courts "need not presume the truthfulness of the plaintiff's allegations" and can "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. (citation omitted). Dismissal under Rule 12(b)(1) is warranted "'where the alleged claim under the [C]onstitution … clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous.'" *Id*. (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Rule 12(b)(6) is read in conjunction with Rule 8(a)[.]" *Zixiang Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a

court to dismiss a claim on the basis of a dispositive issue of law.") (citation omitted). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "Pleadings by pro se plaintiffs are reviewed liberally and afforded the benefit of the doubt." *Easter v. Samuel*, 2024 WL 5413115, at *2 (C.D. Cal. Nov. 27, 2024) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nonetheless, the court need not accept legal conclusions as true merely "because they are cast in the form of factual allegations." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

If a complaint fails to state a plausible claim for relief, courts are instructed to grant leave to amend unless the "complaint could not be saved by any amendment." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020) (citation omitted). But, "if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend," even if the plaintiff is *pro se*. *See Easter*, 2024 WL 5413115, at *3 (citation omitted); *see also Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment); *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC*, 946 F.3d 542, 547 (9th Cir. 2019) ("A district court acts within its discretion to deny leave to amend when the amendment would be futile") (citation omitted).

//

## DISCUSSION

Plaintiffs' central concern is that Defendants have failed to act in accordance with Sections 555(b) and 706(1) of the APA and/or Mandamus Act by unreasonably delaying the final adjudication of Mr. Khayyami's visa application. *See generally* ECF No. 1.[1]

### A. The Interaction between Mandamus and APA Claims

Section 706(1) of the APA allows courts to compel unreasonably delayed agency action "when the agency (1) has 'a clear, certain and mandatory duty' … and (2) has unreasonably delayed in performing such duty." *Vaz v. Neal*, 33 F.4th 1131, 1336 (9th Cir. 2022) (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)); *see also* 5 U.S.C. § 706(1). Similarly, under the Mandamus Act, a court may compel agency action upon a finding that "(1) the plaintiff's claim is clear and certain; (2) the duty is 'ministerial and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1251 (S.D. Cal. 2024) (quoting *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995). As "the relief sought under the Mandamus Act and under § 706(1) of the APA is 'essentially the same,'" *id*. (quoting *Indep. Mining Co. v. Babbit*, 105 F.3d 502, 507 (9th Cir. 1997), a court "may elect to analyze the APA claim only." *Vaz*, 33 F.4th at 1135.

Here, as Plaintiffs concede, the APA offers the exact same relief as the Mandamus Act—to compel unreasonably delayed agency action. ECF No. 1 at ¶ 47 (seeking "an order

[1] Although Plaintiffs' complaint seemingly alleges that Defendants also "unlawfully withheld" Mr. Khayyami's visa application, *see* ECF No. 1 at ¶ 44, nowhere in Plaintiffs' Opposition do they address or, at a minimum, clarify this claim. Rather, Plaintiffs clearly state that they "seek only a ruling that Defendants must act within a reasonable time, as required by the [APA], 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361." ECF No. 11 at 1. Given Plaintiffs' failure to "sufficiently distinguish between visa adjudications being 'unlawfully withheld' as opposed to 'unreasonably delayed' under § 706(1)," the Court deems Plaintiffs' unlawful withholding claim stems from the unreasonable delay claim and can thus be addressed in tandem. *See Rezai v. Blinken*, 2024 WL 4830988 at *4 (S.D. Cal. Nov. 18, 2024) (quoting *Lee v. Blinken*, 2024 WL 639635, at *7 (D.D.C. Feb. 15, 2024) (cleaned up).

compelling Defendants to adjudicate the visa application without further delay"); *see also* ECF No. 11 at 3 ("Mandamus relief overlaps with APA relief."). Accordingly, the Court will only analyze Plaintiffs' APA claim. *See Infracost*, 732 F. Supp. 3d at 1251; *see also Shahijani v. Laitinen*, 2023 WL 6889774, at *2 (C.D. Cal. Oct. 6, 2023) ("Where, as here, a plaintiff seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only."). Should Plaintiffs' APA claim fail, then Plaintiffs' "claim under the Mandamus Act fails as well." *Davila v. Cohan*, 2024 WL 711618, at *4 (S.D. Cal. Feb. 21, 2024) (citing *Vaz*, 33 F.4th at 1138-39).

The Court has subject matter jurisdiction over Plaintiffs' APA claims pursuant to 28 U.S.C. § 1331. *See Vaz*, 33 F.4th at 1138-39 (finding APA claims "arise[] under the laws of the United States, and the district court ha[s] subject matter jurisdiction"). Section 706(1), together with Section 555(b), stipulate that courts can review agency actions and may, if necessary, "compel[] agency action that has been improperly withheld or unreasonably delayed." *Telecomm. Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 77 (D.C. Cir. 1984) (citation omitted).

Therefore, the Court rejects Defendants' argument that Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction. The Court will proceed to evaluate whether Plaintiffs' complaint states a plausible claim for relief under the APA.

**B. A Mandatory Duty Exists To Adjudicate Visa Applications To Finality**

Defendants assert that there is no mandatory duty within the meaning of the APA that requires visa applications to be further adjudicated once it has been refused by a consular officer under INA § 221(g), 8 U.S.C. § 1201(g). ECF No. 10 at 12-13; *see also* ECF No. 10-1 at ¶ 5 (explaining Mr. Khayyami's visa application was refused by consular officer pursuant to INA § 221(g), 8 U.S.C. § 1201(g)). Defendants cite to a recent opinion issued by the Circuit Court of Appeals for the District of Columbia that found a consular officer issued a "final decision" by refusing the visa application at the interview and that any further reconsideration while the application was placed in administrative processing was only discretionary. *Karimova v. Abate*, 2024 WL 3517852, at *2-4 (D.C. Cir. July 24,

2024). Following this logic, the *Karimova* Court determined there was no statutory basis under Section 555(b) to compel the government to make another "final decision" on the "already-refused visa application." *Id*. at *3 (finding Section 555(b)'s general directive to conclude within a "reasonable time" does not "place upon consular officers a 'crystal-clear legal duty' after they have adjudicated a visa application to then forgo any potentially beneficial follow-on administrative processing"). This Court is not persuaded by the reasoning in *Karimova*.

In the Ninth Circuit, courts have consistently recognized that Section 555(b) imposes a nondiscretionary duty to conclude the processing of a visa within a reasonable time and that a refusal under INA § 221(g) "is not a final decision." *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) (consular officer's letter rejecting I-130 visa was not a final refusal); *see, e.g.*, *Mirbod v. Blinken*, 2025 WL 418518, at *3 (S.D. Cal. Feb. 6, 2025) (in the context of a visa application in administrative processing, finding that Section 555(b) "'creates a duty that some courts have held can be enforced through 5 U.S.C. § 706(1).'") (quoting *Mosayebian v. Blinken*, 2024 WL 3558378, at *4 (S.D. Cal. July 25, 2024)); *Soroush v. Blinken*, 2025 WL 305837, at *6 (C.D. Cal. Jan. 24, 2025) ("'[C]ourts have consistently recognized that where [an] application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final.'") (quoting *Andalib v. United States*, 2024 WL 685945, at *4 (C.D. Cal Feb. 9, 2024)); *Morales v. Mayorkas*, 2024 WL 2884554, at *3 (S.D. Cal. June 7, 2024) ("[A]n initial consular refusal setting the stage for additional administrative processing is typically part of the visa application process. It is not a final decision. Courts have often recognized that administrative processing precedes a forthcoming final decision.") (citations omitted); *Aminzadeh v. Blinken*, 2024 WL 3811153, at *4 (C.D. Cal. Aug. 9, 2024) ("The mere fact that the Department has chosen to characterize" a refusal under INA § 221(g) as such "does not necessarily make it a final decision; 'the focus should be on what is *actually* happening[.]") (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020) (emphasis added)).

After consideration, this Court agrees that Section 555(b) creates a nondiscretionary

duty requiring agencies to fully adjudicate visa applications, including those placed in administrative processing, and declines to follow *Karimova* for two reasons. First, *Karimova* is an unpublished case from another federal circuit, and it is not binding on this Court. Nor is it, for that matter, binding in the D.C. Circuit. *See Nikjooy v. Rubio*, 804 F. Supp. 3d 76, 81 (D.D.C. 2025) ("The D.C. Circuit has twice declined to publish *Karimova*," which means "'the panel *sees no precedential value* in that disposition.'") (quoting D.C. Cir. R. 36(e)(2) (emphases added)).[2] Moreover, *Karimova* contradicts long-standing precedent in the Ninth Circuit that a refusal under INA § 221(g) "is not a final decision." *See Patel*, 134 F.3d at 932.

Second, it is this Court's opinion that *Karimova* fails to reconcile how a visa application can be considered "officially refused" when it is specifically placed in administrative processing for *further* review. Here, Plaintiffs allege that, at the request of the consular officer, they submitted additional materials as part of further review. ECF No. 1 at ¶¶ 15-19. Likewise, an email response from the U.S. Embassy in Yerevan told Plaintiffs that, although they could not "predict when the processing of [Mr. Khayyami's visa] will be *completed*," the review of the application was "*ongoing*" and that they "will do all [they] can to see that the application is adjudicated *as soon as* administrative processing of this case has been *completed*." ECF No. 1-2 (Ex. G) at 20-21 (emphases added). Taking the factual allegations in the complaint as true, there is no indication that

---

[2] District judges in the D.C. Circuit have likewise declined to follow *Karimova*. *See, e.g.*, *id*. at 81-82 (declining to follow *Karimova* because it "place[d] too much emphasis on the current language in the [Foreign Affairs Manual]—which does not carry the force of law … and too little emphasis on the … realities of the visa-adjudication process") (citations omitted); *Haeri Mehneh v. Blinken*, 2024 WL 5116521, at *5-6 (D.D.C. Dec. 16, 2024) (joining other courts in finding *Karimova* nonbinding and declining to follow *Karimova* when its characterization of consular refusal "as a final decision would create a perverse incentive for the State Department to refuse applications out of hand and then begin the true deliberation process thereafter," leaving "no possibility for judicial oversight of untimely decision making").

a "final decision" had been made with respect to Plaintiffs' visa application. Despite Defendants' "*characterization* [of] a section 221(g) notification as a 'refusal,' that magic word is not a get-out-of-review-free card," especially when, as here, the complaint "sufficiently alleges that the consular officer's 'refusal'" was not a final decision. *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 16 (D.D.C. 2022) (internal citations omitted) (emphasis in original).

Accordingly, the Court concludes that Defendants have a duty to reach a final decision with respect to Plaintiffs' visa application, which they have not done.[3] The Court now moves on to determine whether the delay in adjudicating Plaintiffs' visa application is unreasonable.

**C. Plaintiffs' Unreasonable Delay Claim Fails**

In visa-application cases, to determine if the delay is unreasonable, courts in the Ninth Circuit apply the six-factor "*TRAC*" balancing test. *See Vaz*, 33 F.4th at 1137 (citing *TRAC*, 750 F.2d at 80). These factors include:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason';
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme must supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

---

[3] Plaintiffs also appear to allege Defendants have a nondiscretionary duty to review visa applications to finality pursuant to 8 U.S.C. § 1202(d), 22 C.F.R. § 41.121, and/or 22 C.F.R. § 41.106. ECF No. 1 at ¶¶ 33, 35, 39. Defendants fail to address any of these three provisions. While courts in the Ninth Circuit are split on whether these provisions impose a mandatory duty within the meaning of the APA, *see Infracost*, 732 F. Supp. 3d at 1252 (analyzing and collecting cases), this Court need not resolve this issue upon its finding that Section 555(b) alone imposes a mandatory duty.

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

*Id*. (quoting *TRAC*, 750 F.2d at 80) (cleaned up). All factors must be considered, but the first factor—the rule of reason—is the most important factor to determine unreasonable delay. *See In re A Cmty. Voice v. EPA*, 878 F.3d 779, 786 (9th Cir. 2017).

Plaintiffs argue that a determination of unreasonable delay is a "fact-intensive inquiry" that "is inappropriate at the motion-to-dismiss stage." ECF No. 11 at 3. "While the Court may not have the benefit of a fully developed record, a complaint must still include sufficient factual matter 'to state a claim to relief that is plausible on its face.'" *Shahijani*, 2023 WL 6889774, at *3 (quoting *Kayvan v. Pompeo*, 2020 WL 5834805, at *8 (N.D. Cal. July 28, 2020) (applying *TRAC* test on a motion to dismiss in visa case); *see also Mosayebian*, 2024 WL 3558378, at *6 ("[P]laintiffs in visa-application cases must nevertheless plausibly allege unreasonable delay under the *TRAC* factors to survive a motion to dismiss.") (citation omitted).

**1. Factors One and Two: Rule of Reason and Congressional Timetable**

Although the first factor is regarded as the most important of the six, the first and second factors are often considered together to determine whether the delay is reasonable. *Mirbod*, 2025 WL 418518, at *3 (citing *Lee*, 2024 WL 639635, at *5). Reasonableness of delay requires courts to consider "both the length of the delay and the reasons for the delay." *Shahijani*, 2023 WL 6889774, at *4 (citing *Poursohi v. Blinken*, 2021 WL 5331446, at *5 (N.D. Cal. Nov. 16, 2021)). This includes a review of whether Congress has provided a "timetable or other indication of speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80.

Plaintiffs argue that the first two factors weigh in their favor because, at the time of their Opposition, "delay exceeds 21 months after [the consular] interview and submission

of required information," and this application "involves an IR-5 immediate relative, which receives statutory priority." ECF No. 11 at 3. Plaintiffs contend that Defendants' "[p]rolonged administrative processing" of Mr. Khayyami's application "undermines this statutory purpose." *Id.* But Plaintiffs do not cite any statutory provisions, policies, or legislation for support in their Opposition. *Id.* This is likely because "[t]here is no statutory or regulatory timeframe within which the State Department must adjudicate visas, and Congress has given the agencies wide discretion in the area of immigration processing." *Jazi v. Rubio*, 2025 WL 1222499, at *3 (S.D. Cal. Apr. 25, 2025); *see also Mirbod*, 2025 WL 418518, at * 3 ("[I]n the context of a request for adjudication following refusal, Courts have held that '[n]o statutory or regulatory timeframe exists within which the State Department or a consular office must re-adjudicate visa applications.'") (quoting *Barazandeh v. U.S. Dep't of State*, 2024 WL 341166, at *3 (D.D.C. Jan. 30, 2024)). In their complaint, Plaintiffs rely on 5 U.S.C. § 555(b) for support that federal agencies must act "within a reasonable time." ECF No. 1 at ¶¶ 29, 43. But this provision merely indicates Congress's desire "that agencies *should* act within reasonable time frames[.]" *TRAC*, 750 F.2d at 77 (emphasis added). Section 555(b) can hardly be considered a congressional timetable.

With no congressionally mandated timetable for adjudicating family immigrant visa applications, the Court relies on case law to determine whether the length of delay is unreasonable. The length of delay in visa application processing is "measured from the time that Plaintiffs attended the interview, not the time that they filed the visa petition." *Jazi*, 2025 WL 1222499, at *3 (citing *Ferdowski v. Blinken*, 2024 WL 685912, at *4 & n.26 (C.D. Cal. Feb. 12, 2024)); *see also Nusrat v. Blinken*, 2022 WL 4103860, at *6 & n.6 (D.D.C. Sept. 8, 2022) (explaining delay is measured from the last government action to the issuance of the court's opinion). Although there is no bright line in which delay automatically becomes unreasonable, typically a delay of less than four years is not unreasonable. *Ortiz v. U.S. Dep't of* State, 2023 WL 4407569, at *8 (D. Idaho July 7, 2023) ("Generally, courts have found 'immigration delays in excess of five, six, [and]

seven years are unreasonable, while those between three to five years are often not unreasonable.'" (quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 69-70 (D.D.C. 2022); *see also Siwen Zhang v. Cissna*, 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) (finding delay of approximately four years is generally not unreasonable as a matter of law).

Mr. Khayyami's visa application was refused at his initial consular interview on February 26, 2024. ECF No. 1 at ¶¶ 15-17. Following Mr. Khayyami's submission of additional material, his application has been in administrative processing since March 1, 2024. *Id*. at ¶¶ 18-19. Mr. Khayyami's visa application was pending in administrative processing for approximately 18 months before Plaintiffs filed their complaint. *See id*. Now, through the course of litigation, the delay in adjudicating Mr. Khayyami's visa application is approximately 31 months. In either circumstance, an 18-month or 31-month delay from an initial visa refusal cannot be considered an "unreasonable" length of delay. *See, e.g*, *Mirbod*, 2025 WL 418518, at *4 (finding "post-refusal adjudications" delayed for fourteen and seventeen months are not unreasonable); *Mosayebian*, 2024 WL 3558378, at *8 (application delayed in administrative processing for eleven months is not unreasonably delayed); *Nusrat*, 2022 WL 4103860, at *6 (dismissing unreasonable delay claim where visa application remained in administrative processing for thirty-two months); *Yavari v. Pompeo*, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (noting immigration delays between three and five years are often found reasonable); *Islam v. Heinauer*, 2011 WL 2066661, at *8 (N.D. Cal. May 25, 2011) (point of unreasonableness had "not yet come" following three-year delay in immigration application).

Nonetheless, length of delay is not dispositive. The Court must also consider the reasons for delay in adjudicating Mr. Khayyami's visa application. The complaint states that, during Mr. Khayyami's "immigrant visa interview at the U.S. Consular Section of the Embassy in Yerevan, Armenia, … the visa officer requested additional information for consideration with the visa application." ECF No. 1 at ¶¶ 15, 17. At this time, the consular officer refused Mr. Khayyami's visa application and placed it in administrative processing for further security screening and review. ECF No. 10-1 at ¶ 5.

There is, thus, a clear and identifiable rationale behind Defendants' delay: "the Department appears to have needed additional information to reach a decision" and to adequately vet Mr. Khayyami's visa application. *Davila*, 2024 WL 711618, at *6 ("Given the complex, sensitive nature of the visa determination, a delay to gather additional information is not facially unreasonable"). The Court finds that additional security screening before issuing a visa application is not unreasonable. As Defendants explain, "the decision-making at issue here implicates foreign affairs," which are inherently complex and time-consuming matters touching on national security. ECF No. 10 at 16. Tellingly, Plaintiffs offer no counter argument, only reiterating that the delay is unreasonable. *See* ECF No. 12.

In sum, factors one and two weigh strongly in Defendants' favor because the length of delay, approximately 31-months at this time, is within a range considered reasonable by other courts analyzing delays in visa-applications, including those placed in administrative processing, and the reason for delay, additional security screening, is reasonable.

**2. Factors Three and Five: Nature of Interest**

Factors three and five are often considered together because both factors focus on the harm suffered by the plaintiff. *See, e.g.*, *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.C. Cir. 2020). Here, Plaintiffs allege that their separation from one another "has caused both Plaintiffs to experience significant hardship and loneliness," all of which was exacerbated by the loss of Plaintiff Shabnam Kayami's mother and Plaintiff Bahman Khayyami's wife. ECF No. 1 at ¶ 24. Following the loss of his wife, Mr. Khayyami "no longer has close family members remaining in Iran," and Plaintiffs cannot travel frequently to visit each other. *Id*. at ¶¶ 24-25. Plaintiffs claim Defendants' "prolonged delay" in adjudicating Mr. Khayyami's visa application "imposes concrete and ongoing human harm" that "threatens family unity and well-being[.]" ECF No. 11 at 3.

The Court understands Plaintiffs' family circumstances. However, as Defendants point out, Plaintiffs' interest in prompt adjudication of Mr. Khayyami's visa application is "not unique in the immigration process." ECF No. 10 at 17. Defendants contend that the

"Court must also consider prejudice to other similarly situated applicants," citing cases acknowledging that the reality of "leapfrogging" one application "to the front of the line" would presumably delay the adjudication of other visas. *Id*. (citing *Fangfang Xi v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020). This rebuttal is a better situated argument for the fourth factor, which weighs the effect of expediting one delayed action on other government priorities. *See Sawahreh v. U.S. Dep't of State*, 630 F.Supp. 3d 155, 1163 (D.D.C. 2022) (rejecting defendants' rebuttal that expediting one visa application would come "at the expense of other applicants" because this "is an 'argument[] about the effects of expediting delayed action on other priorities, which 'go[es] to the heart of the fourth factor, not the third and fifth'") (quoting *Milligan v. Blinken*, 2021 WL 3931880, at *8 (D.D.C. Sept. 2, 2021)).

Taking the allegations as true and favorably to the nonmoving party, the Court finds that Defendants' prolonged delay in adjudicating Mr. Khayyami's visa application has caused Plaintiffs real harm. Accordingly, factors three and five weigh in Plaintiffs' favor.

**3. Factor Four: Effect on Competing Priorities**

Factor four considers the "effect of expediting" Mr. Khayyami's application on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Along with the first factor, "the fourth factor is considered among the most important" *TRAC* factors. *Mirbod*, 2025 WL 418518, at *4 (citation omitted).

Defendants claim that Mr. Khayyami's "visa application is among hundreds of thousands of immigrant visa applications being adjudicated worldwide." ECF No. 10 at 17. In their opposition, Plaintiffs contend, without factual support, that there is "no visa backlog or numerical limitation." ECF No. 11 at 3. However, considering the massive amounts of applications reviewed and issued each month, *see Monthly Immigrant Visa Issuance Statistics*, U.S. DEP'T OF STATE, available at: https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/immigrant-visa-statistics/monthly-immigrant-visa-issuances.html (last visited Sept. 28, 2026), Plaintiffs' unsupported assertion—that there is "no visa backlog"—defies common sense. *See, e.g.*,

*Zagnoon v. Blinken*, 2023 WL 7279295, at *4 (W.D. Wis. Nov. 3, 2023) ("Although there is no data about the queue of people waiting to complete administrative processing, the Department of State's website shows that there is generally a significant immigrant visa backlog," such that expediting an application would likely "'reorder a queue'" of visa applicants in administrative processing") (quoting *Tate v. Pompeo*, 513 F.Supp.3d 132, 149 (D.D.C. 2021)). An order compelling Defendants to adjudicate Mr. Khayyami's application to finality would put his application at the head of the line and presumably delay thousands of other pending applications of individuals similarly-situated. *Id.; see also Infracost*, 732 F. Supp. 3d at 1257 ("[E]xpediting plaintiffs' applications would 'necessarily come at the expense of other similarly situated applicants.'") (quoting *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 344 (D.C. Cir. 2023)).

"Courts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee*, 2024 WL 639635, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75-76 (D.C. Cir. 1991). This is true even at the motion to dismiss stage where courts typically find the fourth factor strongly favors the Government in visa application cases, including those mired in administrative processing. *See, e.g.*, *Mirbod*, 2025 WL 418518, at *4 ("'[o]ne need not unearth the details of the visa-adjudication process … to surmise that the relief Plaintiffs seek would reorder [Department] priorities.'") (quoting *Rashidi v. U.S. Dep't of State*, 2023 WL 6460030, at *6 (D.D.C. Oct. 4, 2023); *Davila*, 2024 WL 711618, at *8 ("[R]eason suggests that many applicants other than Plaintiff's spouse are similarly awaiting the finalization of their visa applications" and "prioritizing the administrative processing" of one application "would merely bump Plaintiff up in the queue of other applicants"). This Court agrees. The fourth factor, thus, weighs strongly in Defendants' favor.

**4. Factor Six: Agency Impropriety**

The final *TRAC* factor asks whether the agency's delay is intentional or otherwise caused in bad faith. This factor does not look to the delay itself, but whether the underlying

reason for the delay is one rooted in bad faith. *Mosayebian*, 2024 WL 3558378, at *11. Plaintiffs appear to contend that Defendants' failure to provide any explanation for the delay or expected timeline demonstrates Defendants' impropriety. *See* ECF No. 11 at 3. The Court disagrees. There is no evidence that the delay in adjudicating Mr. Khayyami's visa application is improper, intentional, or motivated by animus. *Mosayebian*, 2024 WL 3558378, at *11 (denying argument that "mere existence of the delay—and the absence of efforts by Defendant to either expedite [the] application or provide substantial update—itself constitutes 'extreme bad faith'"). Nonetheless, factor six is neutral as "the absence of impropriety does not weigh against Plaintiffs." *Id*. (citing *TRAC*, 750 F.2d at 80); *see, e.g.*, *Mirbod*, 2025 WL 418518, at *5 (similarly finding the sixth factor neutral, despite plaintiffs' failure to allege impropriety).

**5. *TRAC* Conclusion**

In sum, factors one, two, and four weigh strongly in Defendants' favor, whereas only factors three and five weigh in Plaintiffs' favor, and factor six is neutral. Using the *TRAC* factors as guidance, Plaintiffs have failed to state either an APA or Mandamus Act claim based on unreasonable delay. *See, e.g.*, *Jarrahi v. Rubio*, 2026 WL 357658, at *6-7, 10 (S.D. Cal. Feb. 9, 2026) (granting motion to dismiss for 20-month delay following consular interview for I-130 application); *Mojtabavi v. Blinken*, 2024 WL 5316832, at *5-7 (C.D. Cal. Oct. 22, 2024) (granting motion to dismiss because 26-month delay in scheduling consular interview is not unreasonable); *Nusrat*, 2022 WL 4103860, at *6-7 (granting motion to dismiss for 32-month delay in administrative processing); *Tekle v. Blinken*, 2022 WL 1288437, at *3-4 (D.D.C. Apr. 29, 2022) (granting motion to dismiss for 33-month delay).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 10). The Court **DENIES** Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). The Court **GRANTS** Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) because the

delay in adjudicating Plaintiffs' visa application is not unreasonable under the *TRAC* factors. However, refiling may be appropriate should future circumstances indicate unreasonable delay requiring judicial review. The dismissal is, therefore, **WITHOUT PREJUDICE.**

**IT IS SO ORDERED**.

Dated: September 28, 2026

Honorable Benjamin J. Cheeks
United States District Judge